Heather M. Burke (SBN 284100)
Jeremy K. Ostrander (SBN 233489)
**WHITE & CASE**LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA  94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
hburke@whitecase.com
jostrander@whitecase.com

*Attorneys for Defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AETNA INC., <br><br> Plaintiff, <br><br> v. <br><br> GILEAD SCIENCES, INC.; GILEAD HOLDINGS, LLC; GILEAD SCIENCES, LLC (f/k/a BRISTOL-MYERS SQUIBB & GILEAD SCIENCES, LLC); GILEAD SCIENCES IRELAND UC (f/k/a GILEAD SCIENCES LIMITED); BRISTOL-MYERS SQUIBB COMPANY; E.R. SQUIBB & SONS, L.L.C.; JANSSEN PRODUCTS, L.P.; and JANSSEN R&D IRELAND (f/k/a TIBOTEC PHARMACEUTICALS), <br><br> Defendants. | **Case No.:** <br><br> **GILEAD DEFENDANTS' NOTICE OF REMOVAL** <br><br> **Complaint Filed:**  January 31, 2022 <br><br> **Removed From:**  Superior Court of the State of California, County of San Mateo, Case No. 22-CIV-00303 |

1  TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
2  DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AETNA INC. AND ITS COUNSEL OF
3  RECORD:

4      **PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, 1651, and the authority cited below, Defendants Gilead Sciences, Inc., Gilead Holdings, L.L.C., Gilead Sciences, L.L.C., and Gilead Sciences Ireland UC (collectively "Gilead Defendants") hereby remove this action, Case No. 22-CIV-00303 in the Superior Court of the State of California, County of San Mateo, to this Court.  Removal is proper based on the original subject-matter jurisdiction of this Court under 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1651 (Writs).  This removal comports with 28 U.S.C. § 1446 (procedure for removal of civil actions).

    In further support of this Notice of Removal, the Gilead Defendants provide the following non-exhaustive summary of the grounds for removal:

### TIMELINESS OF REMOVAL

    This notice of removal is timely under 28 U.S.C. § 1446(b) as it is being filed "within 30 days after receipt by the defendant, through service, or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action . . . is based."  The Complaint here was filed on January 31, 2022 and purported service was attempted on Gilead Sciences, Inc., Gilead Holdings, L.L.C., and Gilead Sciences, L.L.C. on February 1, 2022.  Upon information and belief, other domestic Defendants named in the Complaint (i.e., Bristol-Myers Squibb Company, E.R. Squibb & Sons, L.L.C., Janssen Products, L.P.) were also purportedly served on February 1, 2022.  *See* Decl. of Heather M. Burke ¶ 5.  Upon information and belief, Gilead Sciences Ireland UC and Janssen R&D Ireland have not been served.  *See* Decl. of Heather M. Burke ¶ 6.

### VENUE

    For purposes of removal, venue is proper in this Court because the U.S. District Court for the Northern District of California, San Francisco Division, is "the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## CONSENT

Pursuant to 28 U.S.C. § 1446(b)(2)(A), defendants "who have been properly joined and served must join in or consent to the removal of the action." All purportedly served Defendants, as well as the unserved Defendants, have consented to removal. Decl. of Heather M. Burke ¶ 7. Accordingly, the requirements of 28 U.S.C. § 1446(b)(2)(A) are met here.

## THIS COURT HAS DIVERSITY JURISDICTION

This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a). This action may therefore be removed to this Court under 28 U.S.C. § 1441(a) because the Complaint is between "citizens of different States" and the amount in controversy exceeds $75,000, exclusive of interest and costs.

According to the Complaint, Plaintiff, a corporation, is a citizen of Pennsylvania and Connecticut, and none of the Defendants named in the Complaint is a citizen of either one of those States:

| Party | Incorporation | Principal Place of Business | Complaint |
|---|---|---|---|
| *Plaintiff Aetna Inc.* | *Pennsylvania* | *Connecticut* | ¶ 33 |
| Defendant Gilead Sciences, Inc. | Delaware | California | ¶ 36 |
| Defendant Gilead Holdings, LLC | Delaware | California | ¶ 37 |
| Defendant Gilead Sciences, LLC | Delaware | California | ¶ 38 |
| Defendant Gilead Sciences Ireland UC | Ireland | Ireland | ¶ 39 |
| Defendant Bristol-Myers Squibb Co. | Delaware | New York | ¶ 40 |
| Defendant E.R. Squibb & Sons, L.L.C. | Delaware | New York | ¶ 41 |
| Defendant Janssen Products, L.P. | New Jersey | New Jersey | ¶ 42 |
| Defendant Janssen R&D Ireland | Ireland | Ireland | ¶ 43 |

Accordingly, complete diversity exists between the Plaintiff and the Defendants here. *See* 28 U.S.C. § 1332(c) ("For purposes of this section and section 1441 of this title—(1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").

While the Gilead Defendants deny liability, if Plaintiff were to prevail on its claims, it is more likely than not that the amount in controversy would significantly exceed $75,000, exclusive of interest and costs. Although the Complaint does not allege a specific amount in controversy, this fact

does not deprive this Court of jurisdiction. *See, e.g.*, *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F. 3d 373, 377 (9th Cir. 1997) (holding that the District Court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy and that, if not, the court may consider facts in the removal petition and may require parties to submit summary-judgment-type evidence).

Here, the Complaint expressly seeks overcharge damages for alleged violations of numerous laws based on "many millions of dollars' worth of those drugs hav[ing] been, and continu[ing] to be, sold" (Compl. ¶¶ 363, 382, 401, 421, 436, 452, 464, 476, 487, and 506), and that the alleged conduct "resulted in billions of dollars in annual excess profits that accrued (and continue to accrue)" (*id.* ¶ 6). *See also id.* ¶ 3 ("With yearly sales in the U.S. exceeding $13 billion, Gilead has extracted enormous profits from its HIV drugs."); ¶ 330 (seeking treble damages). Based on these and other allegations in the Complaint, it is "facially apparent" that the amount in controversy is well in excess of $75,000.

Moreover, although Plaintiff purports to have served the Gilead Defendants, the forum-defendant exception to removal under 28 U.S.C. § 1441(b)(2) is inapplicable. That exception to removal based on diversity jurisdiction applies only where a forum-resident defendant has been "*properly* joined and served" with the Summons and Complaint. *See* 28 U.S.C. § 1441(b)(2) (emphasis added). Here, no forum-resident Defendant has been "properly joined and served" within the meaning of § 1441(b)(2).

The Gilead Defendants were not "properly joined and served" in this action as Plaintiff is engaging in an improper scheme to avoid and subvert 28 U.S.C. § 1441 as well as this Court's jurisdiction. Indeed, this action comes on the heels of a virtually identical action by Plaintiff that was removed to this Court by the Gilead Defendants on December 20, 2021. *Aetna, Inc. v. Gilead Scis., Inc.*, Case No. 21-cv-09827 (N.D. Cal.), ECF No. 1. Plaintiff represented to the Court and the parties several times that Plaintiff would move to remand that action to state court thereby allowing this Court to determine its removal jurisdiction—and indeed Plaintiff filed a motion to remand to that effect on January 18, 2022. But then Plaintiff suddenly purported to voluntarily dismiss its initial action on February 1, 2022, before the motion to remand briefing could be completed and this Court could issue a ruling as to its removal jurisdiction. *See Aetna*, No. 3:21-cv-09827 (N.D. Cal.), ECF

Nos. 12 (Motion to Remand), 14 (Notice of Voluntary Dismissal).  While not disclosed in Plaintiff's Notice of Voluntary Dismissal, Plaintiff had filed its Complaint in this new action the prior day, and had purported to serve certain Defendants, including the forum-resident Defendants, the very same day.  Plaintiff took these steps in an effort to effectuate a "self-help" remand and to subvert the Court's jurisdiction.  Thus, the Defendants in this new action have hardly been "properly joined and served" within the meaning of § 1441(b)(2), and Plaintiff's blatant attempt at a do-over should be rejected.

The forum-defendant exception to removal based on diversity jurisdiction does not apply under these circumstances.  *See In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 225175, at *14-20 (M.D. Pa. Nov. 22, 2021) (declining to remand case based on the forum-defendant exception because of plaintiff's "gamesmanship" of dismissing a federal action and re-filing it in state court to avoid a forum-defendant's earlier removal prior to being "properly joined and served").

Furthermore, the forum-defendant exception is procedural rather than jurisdictional.  *See Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 936 (9th Cir. 2006) ("We join eight of the nine circuits that have decided this issue and hold that the forum defendant rule is procedural . . . .").  Thus, the forum-defendant exception is subject to waiver and estoppel, and may not be invoked where a plaintiff, like Aetna, has taken steps to waive reliance upon the exception or has engaged in inequitable conduct.  *See In re Sorin*, 2021 U.S. Dist. LEXIS 225175, at *14-19 (holding plaintiff waived ability to assert the forum-defendant exception due to plaintiff's "bad faith" and "Janus-faced gamesmanship" in re-filing their state court action); *cf. Lou v. Belzberg*, 834 F.2d 730, 741 (9th Cir. 1987) ("We agree with the Fifth Circuit that where a second state court suit is fraudulently filed in an attempt to subvert the removal of a prior case, a federal court may enter an injunction" enjoining proceedings in the state court) (citing *Frith v. Blazon-Flexible Flyer, Inc.*, 512 F.2d 899 (5th Cir. 1975)).  Here, waiver and estoppel apply, based on Plaintiff's inequitable conduct in making and breaching representations about permitting this Court to determine its removal jurisdiction in Plaintiff's initial action.

## **THIS COURT HAS FEDERAL-QUESTION JURISDICTION**

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Whether a case "arises under" federal law is be determined based on the contents of a "well-pleaded complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-10 (1983).

A "longstanding . . . variety of federal 'arising under' jurisdiction" is when state-law claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The Supreme Court has recognized this category of federal-question jurisdiction "for nearly 100 years." *Id.*; *see Franchise Tax Bd.*, 463 U.S. at 9 (observing that the Court has "often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law").

In determining whether claims arise under federal law, courts consider whether a federal issue is: (1) "necessarily raised," (2) "actually disputed," (3) "substantial," and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable*, 545 U.S. at 314.

Plaintiff's Complaint is a copycat of nationwide class actions filed in 2019 and 2020 in the United States District Court for the Northern District of California: *Staley et al. v. Gilead Sciences, Inc. et al.*, No. 3:19-cv-2573 (N.D. Cal.); *KPH Healthcare Services, Inc. v. Gilead Sciences, Inc. et al.*, No. 3:20-cv-06961 (N.D. Cal.). Additional opt-out actions have been related and coordinated under the *Staley* action. Each of these federal actions assert subject-matter jurisdiction based on, among other provisions, 28 U.S.C. § 1331 (federal question). Plaintiff and its counsel have engaged in a strategy to construct the Complaint here to circumvent federal-court jurisdiction. This strategy fails because federal subject-matter jurisdiction exists over this action, making the action removable.

The Complaint raises multiple substantial questions of federal law. On the face of the Complaint, not just one claim, but each of Plaintiff's state-law claims implicate substantial federal questions that are disputed and necessarily turn on the analysis, interpretation, and application of federal patent, drug regulatory, and antitrust laws.

**A.  Plaintiff's Claims Necessarily Raise Substantial Federal Issues Concerning Patent Validity and Infringement Under Federal Patent Law.**

"Since the Patent Act of 1800, Congress has lodged exclusive jurisdiction of actions 'arising under' the patent laws in the federal courts, thus allowing for the development of a uniform body of law in resolving the constant tension between private right and public access." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 162 (1989); *see* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . No State court shall have jurisdiction over any claims for relief arising under any Act of Congress relating to patents. . . ."). Each of Plaintiff's claims here necessarily turns on substantial questions of federal patent law.

Plaintiff alleges that, but for the settlement of the Gilead-Teva patent litigation in the U.S. District Court for the Southern District of New York, Teva would have won the patent litigation and generic entry would have occurred earlier in time. *See, e.g.*, Compl. ¶¶ 116, 124-26, 175. The Complaint, for example, re-asserts the patent invalidity arguments Teva raised in the federal patent litigation—relying on federal patent law—to argue that the patents at issue are obvious and anticipated. *See, e.g.*, Compl. ¶ 161 (citing Teva's Mem. in Opp'n to Pls.' Opening Pretrial Br., *Merck Sharp & Dohme Corp., et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 1:10-cv-01851 (S.D.N.Y. May 28, 2013), ECF No. 96)); *id.* ¶¶ 176-177 (citing Teva's Mem. in Opp'n to Gilead's Pre-Trial Mem., *Gilead v. Teva*, No. 1:08-cv-10838 (S.D.N.Y. Sept. 23, 2013), ECF No. 152).

Plaintiff's other claims also necessarily turn on federal patent law. For example, Plaintiff alleges that "[a]bsent Gilead and BMS's [joint-venture] agreement . . . an unrestrained competitor in BMS's position would have challenged Gilead's patents one year before expiration of NCE exclusivity on July 2, 2008, and could have entered the market as early as January 2011." Compl. ¶ 94; *see id.* ¶ 213 (alleging the same with respect to the Gilead-Janssen collaboration agreements); *see also id.* ¶ 76 ("Gilead knew the patents . . . were weak and vulnerable."); *id.* ¶ 116 ("Knowing its patents were weak and likely to be invalidated, Gilead filed meritless patent infringement suits against generic challengers of TDF patents."); *id.* ¶ 161 ("[EFV] Patents were invalid because they were inherently anticipated and/or obvious." (citing Teva's Mem. in Opp'n to Pls.' Opening Pretrial Br.,

*Merck Sharp & Dahme Corp., et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. l:10-cv-01851 (S.D.N.Y. May 28, 2013), ECF No. 96)); *id.* ¶ 246 ("An untainted competitor in Janssen's position would have challenged Gilead's patents one year before the expiration of that exclusivity and could enter the market as early as the expiration of the 30-month stay, in September 2022."); *id.* ¶¶ 354, 373, 391, 411 ("Gilead was pursuing a strategy of creating FDCs with other manufacturers and developers of cART components with longer or stronger patent life so as to extend the 'product life cycle' of TDF and TDF-based cART regimens."). Likewise, the Complaint's allegations of delay in launching TAF-based HIV treatments is premised on the same federal patent-validity issues. *See, e.g.*, Compl. ¶ 108 ("Gilead sat on TAF for over a decade. Holding TAF in reverse to later reformulate TDF-based FDCs would 'bring quite a bit of longevity to the Gilead portfolio'"); *id.* ¶ 264 ("Gilead's delay in marketing TAF-based HIV medications dramatically delayed the date on which generic manufacturers could challenge the Vemlidy and Descovy patents.").

Given these and other allegations in the Complaint, removal is proper because such substantial federal patent issues are essential to and form the basis of Plaintiff's state-law claims. *See Grable*, 545 U.S. at 315. These disputed federal patent issues are substantial because, among other reasons, they directly affect an area reserved for exclusive federal jurisdiction, involve aspects of a complex federal regulatory scheme, and implicate patent rights related to existing and future HIV and other treatments. *See id.* at 313.

### B. Plaintiff's Claims Necessarily Raise Substantial Federal Issues Concerning the Hatch-Waxman Act and the Nationwide FDA Regulatory Scheme.

Each of Plaintiff's claims here also necessarily turn on substantial federal questions under the Hatch-Waxman Act and the FDA's nationwide prescription-drug regulatory scheme. The Complaint cites and extensively relies on The Drug Price Competition and Patent Term Restoration Act of 1984 as amended—more commonly referred to as the Hatch-Waxman Act. *See, e.g.*, Compl. ¶¶ 49-65. Leveraging the Congressional intent behind the Act, the Complaint asserts: "Congress had two goals in enacting the Hatch-Waxman Amendments. First, it sought to expedite the entry of legitimate (non-infringing) generic competitors, thereby reducing healthcare expenses nationwide. Second, it sought to protect pharmaceutical manufacturers' incentives to create new and innovative products." *Id.* ¶ 51.

Borrowing from and copying the federal antitrust complaints pending in the Northern District of California, the Complaint proceeds in the patent-settlement claims to assert that "Gilead also included 'most-favored entry' ("MFE") and 'most-favored-entry-plus' ("MFEP") provisions in its patent settlements with Teva and other generic manufacturers." *Id.* ¶ 139. As the Complaint admits, the MFE allegations necessarily depend on the interpretation and application of federal law governing drug approval and exclusivity: "Teva and these subsequent filers faced the same economic dynamics as in the case of Viread: the MFEs and MFEPs granted to Teva dissuaded the second filers from continuing to litigate and provided Teva a period of exclusivity.  Significantly, at the time of the settlement, Teva had forfeited its 180-day ANDA exclusivity with respect to Truvada, and may have forfeited it with respect to Atripla, by having failed to obtain tentative FDA approval within 30 months of submitting its application." *Id.* ¶ 194 (citing 21 U.S.C. § 355 (j)(5)(D)(i)(I)(aa)(BB)).  The Complaint further describes the Most Favored Entry clauses as tethered to the Congressional policy embodied in the Hatch-Waxman Act.  *See, e.g.*, *id.* ¶¶ 61-63 (describing Hatch-Waxman Act's generic-approval pathways and exclusivity and forfeiture provisions); *id.* ¶ 64 ("Despite these legal reforms, however, brand manufacturers and first-filing generics can structure their settlements to skirt these forfeiture provisions.").

Moreover, as part of its "reverse payment" theory, the Complaint sets out the unsupported contention that Gilead and Teva perpetrated some sort of sham filing with the Federal Trade Commission in violation of the federal Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("the Medicare Modernization Act").  The Complaint alleges that the Medicare Modernization Act requires the parties to such patent-litigation settlements to disclose "the terms of the settlements to the Federal Trade Commission and the U.S. Department of Justice," and that the Federal Trade Commission took a direct role in shaping the final settlement terms here.  Compl. ¶¶ 127-28; *see also id.* ¶ 132 (alleging misrepresentations to the Federal Trade Commission and the federal judge overseeing the patent litigation about settlement terms:  "However, what Gilead and Teva did not disclose was that even though they removed the 'No-AG' language from the agreement, they still had an agreement preventing Gilead from launching an AG at the point of Teva's delayed generic entry."); *id.* ¶ 138 ("The purpose of the settlement agreement was clear: in exchange for

delayed generic entry, Teva would be granted exclusive entry into the market without competition from a Gilead AG.").

Additionally, Plaintiff's allegations of generic delay relate, for example, to the Atripla joint-venture agreement and Gilead's alleged delay in launching TAF-based and PrEP-indicated products are also predicated on determinations about approval by the Federal Drug Administration and pharmaceutical exclusivity under federal law. For instance, Plaintiff alleges that absent the joint-venture agreement it "would be in [Gilead's and BMS's] individual economic interests to market competing generic-drug-based or comparable-drug-based FDCs as soon as possible." Compl. ¶ 87; *see also id.* ¶ 94 ("Absent Gilead and BMS's agreement . . . an unrestrained competitor in BMS's position would have challenged Gilead's patents one year before expiration of NCE exclusivity . . . and could have entered the market as early as January 2011."); *id.* ¶ 265 (alleging "generic entry dates would have been much earlier"). Plaintiff similarly alleges that Gilead manipulated the regulatory process to launch standalone TAF only with a Hepatitis B indication and delay TAF-approval. *See, e.g.*, Compl. ¶ 261 ("Additionally, obtaining FDA approval of an HIV indication for standalone TAF would have been economically rational for Gilead, absent its anticompetitive motivations and objectives. FDA approval of standalone TAF for treatment of HIV would have required, at most, that Gilead submit some bioequivalence data that would have been trivial and inexpensive for Gilead to obtain."); *id.* ¶ 264 ("Gilead's delay in marketing TAF-based HIV medications dramatically delayed the date on which generic manufacturers could challenge the Vemlidy and Descovy patents.").

Any determination of whether a competing generic version of Atripla, Complera, Prezcobix, Symtuza or Odefsey, for example, could have launched earlier in time, as Plaintiff alleges, necessarily turns on the interpretation and application of federal drug approval and exclusivity laws and regulations. *See, e.g.*, Compl. ¶¶ 49-65 (describing the federal regulatory approval scheme under the Hatch-Waxman Act, 21 U.S.C. §§ 355(j), *et seq.*); *id.* ¶¶ 94, 97 (alleging Atripla competition subject to "that NCE exclusivity"); *id.* ¶¶ 213-14 (alleging that Janssen would have launched a competing version of Complera long before December 2017 absent the "No-Generics Restraint" in the Complera Agreement because "[n]o NCE exclusivity would have barred Janssen from timely seeking FDA approval"); *id.* ¶¶ 259-64 (describing Gilead's alleged use of the FDA regulatory framework in

furtherance of an anticompetitive scheme to "delay[] seeking FDA approval to market standalone TAF (Vemlidy)" and refusal "to seek FDA approval of standalone TAF for use in treatment of HIV"). Such determinations would also directly implicate the federal regulatory pathway available for future competing HIV and other pharmaceutical treatments.

Finally, the Complaint further asserts that the Gilead Defendants engaged in fraudulent marketing and promotion of FDA-regulated HIV medications. *See, e.g.*, Compl. ¶ 233 ("Gilead disparaged TDF-based products in favor of TAF-based products via TAF-based product websites, scientific conferences, investors calls, promotional materials, and scientific studies."); *id.* ¶ 251 ("Gilead disseminated misleading propaganda mischaracterizing the inappropriateness of Truvada and its associated adverse events and risk profiles while touting the alleged benefits of Descovy."). To determine whether such promotional materials were "false" or "fraudulent" necessarily turns on the interpretation and application of federal law. *See, e.g.*, 21 C.F.R. § 202.1(e)(5)-(7) (regulating marketing and promotional materials for FDA-approved drugs and defining the parameters of a "true statement" as well as representations that are "false, lacking in fair balance, or otherwise misleading").

Given these and other allegations in the Complaint, removal is proper because such substantial federal drug-regulatory issues are essential to and form the basis of Plaintiff's state-law claims. *See Grable*, 545 U.S. at 315. These drug-regulatory issues are substantial because, among other reasons, they directly affect an area reserved for exclusive federal jurisdiction, involve aspects of a complex federal regulatory scheme, implicate FDA-drug exclusivity, approval, and other pathway issues related to existing and future HIV and other treatments, and implicate how FDA-regulated products may be promoted. *See id.* at 313. Plaintiff also seeks broad injunctive relief that, if granted, would have nationwide implications concerning the resolution of federal patent litigation and the ongoing sale of numerous HIV treatments throughout the United States. *See* Compl. at 128 "Demand for Judgment" ("Aetna respectfully requests . . . Permanent injunctive relief enjoining Defendants from continuing their illegal conduct and requiring them to take affirmative steps to dissipate the effects of their prior conduct . . . .").

GILEAD DEFENDANTS' NOTICE OF REMOVAL

### C. Plaintiff's Claims Necessarily Raise Substantial Federal Issues Concerning Federal Antitrust Law.

The Complaint asserts unilateral monopolization and attempted monopolization claims under California's Cartwright Act. *See* Compl. ¶¶ 432, 448(c), 461, 473(c) (Counts V-VIII). The Complaint's factual allegations also make it clear that Plaintiff is challenging such unilateral conduct. *Id.* ¶¶ 23-25, 101-08, 219-23, 249-67. However, "[a]n alleged unilateral attempt to establish a monopoly is not cognizable under the Cartwright Act"—it must be asserted under the federal Sherman Act. *Templin v. Times Mirror Cable TV*, 1995 WL 314607, at *2 (9th Cir. May 22, 1995). Notably, Plaintiff copied nearly verbatim the Sherman Act, 15 U.S.C. § 2, "Monopolization," "Monopolistic Scheme," and "Attempted Monopolization" claims from the federal complaints recently filed in this Court. *See, e.g.*, Humana Compl., Counts VII and X, No. 3:21-cv-9621, ECF No. 1. Plaintiff cannot circumvent federal-question jurisdiction by superficially changing headings in the Complaint from "Sherman Act" to "Cartwright Act" while maintaining the same substantive monopolization allegations, especially when a unilateral monopolization claim "is not cognizable under the Cartwright Act." *Templin*, 1995 WL 314607, at *2. Courts have long recognized that plaintiffs "may not defeat removal by omitting to plead necessary federal questions in a complaint" or by engaging in "artful pleading." *Nat'l Credit Reporting Ass'n, Inc. v. Experian Info. Sols., Inc.*, 2004 WL 1888769, at *2 (N.D. Cal. July 21, 2004) (citing *Franchise Tax Bd. of Cali. v. Const. Laborers Vacation Tr.*, 463 U.S. 1, 22 (1983)).

Plaintiff also separately asserts a claim for "unfair and deceptive trade practices" under California's Unfair Competition Law ("UCL") for all of "the foregoing anticompetitive conduct alleged above." Compl. ¶ 503(c) (Count XI). Like Plaintiff's so-called Cartwright Act claims, when "a plaintiff's UCL unfair prong claim relies on a defendant's alleged abuse of its monopoly position, that claim requires establishing a violation of federal antitrust law." *Rosenman v. Facebook Inc.*, 2021 WL 3829549, at *4 (N.D. Cal. Aug. 27, 2021). "The plaintiff must establish a violation of federal antitrust law because '[n]o California statute deals expressly with monopolization or attempted monopolization.'" *Id.* (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986), *modified*, 810 F.2d 1517 (9th Cir. 1987)); *see also In re NFL Sunday Ticket Antitrust*

*Litig.*, 2016 U.S. Dist. LEXIS 41639, at *14 (C.D. Cal. Mar. 28, 2016) (denying remand because "Plaintiff's UCL cause of action relies on Defendants' alleged 'abuse of its monopoly position'" and "supra-competitive prices").

\* \* \*

As set forth above, Plaintiff's state-law claims necessarily turn on substantial and disputed questions of federal law, justifying "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. Removal to address these substantial federal issues does not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Rather, Plaintiff's strategy to evade federal court invites other courts to reach differing interpretations of these federal issues, including in the U.S. District Court for the Northern District of California where several related cases are already pending and which include various state law claims. *See, e.g.*, *Star Varga v. United Airlines*, 2009 U.S. Dist. LEXIS 64000, at *11 (N.D. Cal. July 24, 2009) (explaining that a plaintiff cannot avoid federal jurisdiction with "'artful pleading,' attempt[ing] to defeat the defendant's right to a federal forum") (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 397 n.2 (1981)); *County of Santa Clara., v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025-31 (N.D. Cal. 2005) (denying remand in drug overcharge case because "[f]or this case to be resolved on its merits, at least one of the federal issues embedded in the complaint must be addressed.").

**COPIES OF STATE-COURT DOCUMENTS AND STATE-COURT NOTICE**

The Gilead Defendants have included with its Notice of Removal a copy of all purported "process, pleadings, and orders" that the Gilead Defendants received in connection with the state court action as provided in 28 U.S.C. § 1446(a), which are attached as Exhibit A to the accompanying Declaration of Heather M. Burke. In accordance with 28 U.S.C. § 1446(d), the Gilead Defendants are concurrently filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of San Mateo, and providing written notice to Plaintiff. *See* Exhibit B.

|    |                                |                                                                                                                                                                                                                                                          |
|----|--------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 1  |                                | Respectfully submitted,                                                                                                                                                                                                                                  |
| 2  | Dated:   February 3, 2022      | WHITE & CASE LLP                                                                                                                                                                                                                                         |
| 4  |                            By: | */s/ Heather M. Burke* <br>Heather M. Burke (SBN 284100)<br>Jeremy K. Ostrander (SBN 233489)<br>**WHITE & CASE** LLP<br>3000 El Camino Real<br>2 Palo Alto Square, Suite 900<br>Palo Alto, CA  94306-2109<br>Telephone:  (650) 213-0300<br>Facsimile: (650) 213-8158<br>hburke@whitecase.com<br>jostrander@whitecase.com |
| 10 |                                | *Attorneys for Defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC*                                                                                                                             |

## **CERTIFICATE OF SERVICE**

I, Heather Burke, the undersigned, hereby declare as follows:

I am a resident of the State of California, over the age of eighteen years, and not a party to this action. I am employed by White & Case LLP, counsel of record for Defendants Gilead Sciences, Inc., Gilead Holdings, LLC, Gilead Sciences, LLC, and Gilead Sciences Ireland UC (together, "Gilead"), in the removed action captioned above. My business and mailing address is 3000 El Camino Real, 2 Palo Alto Square, Suite 900, Palo Alto, CA 94306-2109.

On February 3, 2022, I served and caused to be served true and correct copies of the following document(s):

- Gilead Defendants' Notice of Removal and all attachments

by sending them via electronic transmission and couriering physical copies to be delivered on February 4, 2022 to the following persons at the mail addresses below:

Daniel A. Sasse
Joanna M. Fuller
Tiffanie L. McDowell
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California 92614
Telephone: 949.263.8400
Facsimile: 949.263.8414
DSasse@crowell.com
JFuller@crowell.com
TMcDowell@crowell.com

Kent A. Gardiner
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: 202.624.2500
Facsimile: 202.628.5116
KGardiner@crowell.com

*Attorneys for Plaintiff Aetna Inc.*

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of February, 2022, in Palo Alto, CA 94306-2019.

1 | Dated:   February 3, 2022                    Respectfully submitted,
2
3
4 |                                               By:   */s/  Heather M. Burke*
5 |                                                     Heather M. Burke
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28