1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    AETNA INC.,                           Case No. 22-cv-00740-EMC

8                    Plaintiff,
                                           **ORDER GRANTING PLAINTIFF'S**
9           v.                             **MOTION TO REMAND, AND**
                                           **DENYING DEFENDANTS' CROSS-**
10   GILEAD SCIENCES, INC., et al.,        **MOTION**

11                   Defendants.           Docket Nos. 18, 26

12

13

14         Aetna initiated this antitrust lawsuit in state court against Gilead, BMS, and Janssen.  In its

15   complaint, it asserted only state law claims.  Gilead subsequently removed the case to federal

16   court.  Currently pending before the Court is Aetna's motion to remand and Defendants' cross-

17   motion to enjoin Aetna.  Having considered the parties' briefs and accompanying submissions, as

18   well as the oral argument of counsel, the Court hereby **GRANTS** Aetna's motion and **DENIES**

19   Defendants' cross-motion.

20            **I.      FACTUAL & PROCEDURAL BACKGROUND**

21         The pending motions implicate two cases filed by Aetna: the instant lawsuit (hereinafter

22   *Aetna II*) and an earlier-filed suit (hereinafter *Aetna I*[1]) that Aetna voluntarily dismissed.

23         **12/14/2021.**  Aetna filed *Aetna I* in state court.  Aetna asserted only state law claims.  At or

24   about the same time, Aetna's counsel (the Crowell law firm) also filed a number of cases on behalf

25   of other individual health plans in *federal* court.  Those cases had federal claims as well as state

26   claims.

27

28   [1] The case number for *Aetna I* is No. C-21-9827 EMC (N.D. Cal.).

United States District Court
Northern District of California

**12/20/2021.**  Gilead removed *Aetna I* to federal court.  Gilead claimed both diversity jurisdiction and federal question jurisdiction as the basis for removal.

With respect to diversity jurisdiction, Gilead took note of (1) complete diversity and (2) an amount in controversy well in excess of $75,000.  Gilead acknowledged the removal statute's forum defendant rule – and the fact that it is a forum defendant.  *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [*i.e.*, diversity jurisdiction] may *not* be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.") (emphasis added).  However, Gilead argued that the forum defendant rule was not applicable because, at the time it removed the case to federal court, it had not been "properly served."

On federal question jurisdiction, Gilead contended, *inter alia*, that substantial federal issues were raised regarding federal patent law, the Hatch-Waxman Act and the FDA regulatory scheme, and federal antitrust law.

**1/18/2022.**  Aetna moved to remand in *Aetna I*.  The opposition was set to be filed on 2/1/2022.

**1/31/2022.**  Aetna filed *Aetna II* (the instant action) in state court.  The *Aetna II* complaint is basically the same as the *Aetna I* complaint.

**2/1/2022.**  The following day, Aetna filed a notice of voluntary dismissal in *Aetna I*.  (This was before Gilead could file its opposition to the motion to remand in *Aetna I*.)  Thus, implicitly, Aetna was intending to use *Aetna II* as its litigation vehicle rather than *Aetna I*.  On the same day, Aetna served the *Aetna II* complaint on the U.S.-based defendants, including Gilead.  Aetna was thus trying to claim the benefit of the forum defendant rule to preclude removal in *Aetna II*.

**2/3/2022.**  Gilead nevertheless removed *Aetna II* from state to federal court.  Again, Gilead invoked both diversity jurisdiction and federal question jurisdiction.

**2/7/2022.**  Defendants filed a motion asking for the voluntary dismissal in *Aetna I* to be vacated.  The Court denied that motion.  Thus, *Aetna I* is effectively a "dead" case, leaving only *Aetna II*.

1    **2/16/2022.**  In *Aetna II*, Defendants filed a motion to dismiss.[2]

2    **3/2/2022.**  In *Aetna II*, Aetna filed the pending motion to remand.

3    **3/16/2022.**  Defendants filed their opposition to the motion to remand, along with a cross-

4    motion to enjoin Aetna from prosecuting its claims in state court.  According to Defendants, if the

5    Court grants the motion to remand, then it should issue an injunction preventing Aetna from

6    prosecuting *Aetna II* in state court.

7                                    II.        **DISCUSSION**

8    A.        Removal Jurisdiction

9            Title 28 U.S.C. § 1441(a) provides that a case may be removed to federal court so long as

10   there is original jurisdiction – *e.g.*, diversity or federal question jurisdiction.  *See* 28 U.S.C. §

11   1441(a).  However, under the forum defendant rule, "[a] civil action otherwise removable solely

12   on the basis of the jurisdiction under section 1332(a) of this title [*i.e.*, diversity jurisdiction] may

13   not be removed if any of the parties in interest properly joined and served as defendants is a citizen

14   of the State in which such action is brought."  *Id.* § 1448(b)(2).

15           As noted above, Gilead removed the instant case invoking both diversity jurisdiction and

16   federal question jurisdiction.  Thus, for the Court to remand, it would have to find both that (1)

17   diversity jurisdiction is lacking or the forum defendant rule applies and that (2) federal question

18   jurisdiction is lacking.

19   B.        Diversity Jurisdiction – Forum Defendant Rule

20           There is no dispute between the parties that there is diversity jurisdiction – *i.e.*, the parties

21   are completely diverse and the amount in controversy exceeds $75,000.  The only dispute is

22   whether the forum defendant rule applies.

23           1.        "Properly Served"

24           As an initial matter, Defendants suggest that the forum defendant rule does not apply

25   because, even though Gilead is a citizen of California, it was not "properly served."  According to

26   Defendants, Gilead cannot be said to have been properly served in *Aetna II* because Aetna's

27   _____

28   [2] The motion was heard on 3/31/2022 – the same day as the challenges to the other Individual
     Health Plan Plaintiffs' complaints.

United States District Court
Northern District of California

actions of filing *Aetna II* and then voluntarily dismissing *Aetna I* were part of "an attempt to subvert this Court's removal jurisdiction." Opp'n at 5.

Defendants' argument is not persuasive. On its face, "properly served" indicates that the only question is whether there was service on a defendant in compliance with state law. Notably, Defendants do not cite any authority suggesting that "properly served" could have a different meaning. In fact, case law is, if anything, contrary to Defendants' position. *Cf. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("In the usual case, application of the forum defendant rule is straightforward: a defendant is sued in a diversity action in the state courts of its home state, *is served in accordance with state law*, attempts to remove the case, and is rebuffed by a district court applying Section 1441(b)(2).") (emphasis added).

Here, there appears to be no dispute that Gilead was served in compliance with state law. *See* Sasse Decl. ¶ 7 ("On February 1, 2022, Aetna personally served the registered agents for 6 of the 8 Defendants named in the new state action [*Aetna II*].").

2.      Waiver and/or Estoppel

Defendants assert that, even if the forum defendant rule is applicable (*i.e.*, Gilead was "properly served"), that is not the end of the matter because the forum defendant rule is not jurisdictional in nature – which means that a plaintiff may waive the forum defendant rule or that a plaintiff may be estopped from invoking the rule.

Defendants are correct that the forum defendant rule is not jurisdictional. *See* 16 Moore's Fed. Prac. – Civ. § 107.55 (2022) ("All circuits that have addressed the issue have now held that the ban on local defendants is procedural and nonjurisdictional."). The Ninth Circuit has expressly held such. *See Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) (stating that the forum defendant rule "is a procedural, or non-jurisdictional, rule"); *Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011) (stating that "[b]oth the forum defendant rule and the requirement for diversity at the time of removal are statutory requirements imposed by the general removal statute, 28 U.S.C. § 1441, not jurisdictional requirements"). The Ninth Circuit has also explicitly held that the rule may be waived. *See Lively*, 456 F.3d at 942 (stating that "the forum defendant rule . . . is a procedural requirement, and thus a violation of this

United States District Court
Northern District of California

rule constitutes a waivable non-jurisdictional defect subject to the 30-day time limit imposed by §

1447(c)").  Although the Ninth Circuit has not made any ruling as to estoppel, at least some

district courts have.  For example, in *In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig. (No.

II)*, MDL No. 2816, 2021 U.S. Dist. LEXIS 225175 (M.D. Pan. Nov. 22, 2021), the court noted

that

> courts within our circuit and elsewhere have long recognized that
> . . . grounds [other than waiver] may exist for declining to strictly
> enforce [the forum defendant] rule.  Relevant factors include the
> amount of time elapsed before a remand motion is filed, whether the
> movant has made use of federal processes or sought relief from the
> federal court before moving to remand, and *whether the movant has
> engaged in conduct or reaped some benefit "which would make it
> inequitable to remand the case*."

*Id.* at *15-16 (emphasis added); *cf. United States v. Wen*, 454 F. Supp. 3d 187, 193 (W.D.N.Y.

2020) (in discussing exhaustion requirement under the First Step Act (*i.e.*, before a motion for

compassionate release may be filed), stating that "the law is well-established that even statutory

exhaustion requirements – so long as not jurisdictional in nature – are subject to the doctrines of

waiver and equitable estoppel").  For purposes of the pending motion, the Court assumes that

estoppel is a viable doctrine to prevent application of the forum defendant rule.

   In the instant case, Defendants do not really make an argument of waiver but rather focus

on estoppel – *i.e.*, contending that, as a matter of fairness, Aetna must be prevented from trying to

subvert the Court's removal jurisdiction.  Although this argument is not entirely lacking in merit,

the Court rejects it.

   a.   Forum Shopping Motive

   As an initial matter, the Court takes into consideration that there has been gamesmanship

or forum shopping by both parties, and not just Aetna.  As noted above, *Aetna I* came to this Court

from state court because of Gilead's "snap removal."  That is, even though Gilead is a California

resident and thus a forum defendant, it was able to remove *Aetna I* and argue against application of

the forum defendant rule because it managed to remove the case before Aetna was able to serve it.

Defendants protest that snap removal is legally permissible, as this Court and others have held

(though not all courts agree).  This is true.  Nevertheless, that does not mean that the Court cannot

United States District Court
Northern District of California

take into account that conduct as part of the equities.

Indeed, it is worth noting that Aetna can make an argument similar to that made by Defendants – *i.e.*, that its forum shopping conduct is legally permissible under Federal Rule of Civil Procedure 41.  The literal text of Rule 41 allows a plaintiff to unilaterally voluntarily dismiss, so long as it does so before an answer or a motion for summary judgment.  Furthermore, nothing on the face of Rule 41 precludes a plaintiff from refiling the same exact case based on the same exact facts and asserting the same exact claims.  In fact, Rule 41 states that, unless a notice of dismissal "states otherwise, the dismissal is *without* prejudice."  Fed. R. Civ. P. 41(a)(1)(B) (emphasis added).  It so states without qualification.  *See also Concha v. London*, 62 F.3d 1493, 1506 (9th Cir. 1995) (noting that, "[u]nless otherwise stated, the dismissal is ordinarily without prejudice to the plaintiff's right to commence another action for the same cause against the same defendants").

Moore's treatise also lends support to Aetna's position.  The treatise notes that, when a plaintiff files a notice of voluntary dismissal under Rule 41, the "plaintiff's motive for dismissal is generally irrelevant if the dismissal is effected by notice in the early stages of the litigation."  Moore's § 41.11 (emphasis added).  That is what happened in the instant case.  *Aetna I* was filed on 12/20/2021; Aetna voluntarily dismissed the case on 2/2/2022.  A forum shopping motive thus does not vitiate an otherwise proper dismissal.

Indeed, Moore's treatise also notes that, even when a plaintiff is required to file a motion for a voluntary dismissal under Rule 41, a "bad" motive on the part of the plaintiff is not necessarily a bar.  The treatise states:

> A plaintiff's intention to pursue the litigation in state court does not, by itself, constitute [legal] prejudice [to the defendant] sufficient to justify denial of a motion for a voluntary dismissal.
>
> Accordingly, some courts have held that a plaintiff may seek to dismiss federal claims to defeat subject matter jurisdiction, or to refile a complaint naming nondiverse parties to defeat diversity jurisdiction.  Similarly, other courts have held that dismissal is permissible even though the plaintiff's only motive is to defeat removal jurisdiction.

United States District Court
Northern District of California

1    Moore's § 41.40.[3]  *See, e.g.*, *Breuer v. Weyerhaeuser NR Co.*, No. C20-0479JLR, 2020 U.S. Dist.

2    LEXIS 131565, at *2-4 (W.D. Wash. July 24, 2020) (granting plaintiffs' motion to voluntarily

3    dismiss even after plaintiffs withdrew their motion to remand; acknowledging that plaintiffs

4    sought voluntarily dismissal so that they could refile in state court but that defendant's loss of a

5    federal forum did not constitute prejudice to defendant); *Covington v. Syngenta Corp.*, 225 F.

6    Supp. 3d 384, 390-91 (D.S.C. 2016) (denying plaintiff's motion to remand but stating that this

7    "does not mean that Plaintiff cannot seek voluntary dismissal without prejudice as a mechanism to

8    remand," *i.e.*, so as "to litigate the case in state court"); *Hunter v. Surgitek/Medical Engineering*

9    *Corp.*, No. S92-56M, 1992 U.S. Dist. LEXIS 9696, *4-5 (N.D. Ind. May 29, 1992) (noting that

10   "[d]ismissals without prejudice are granted in removed actions so that a plaintiff may proceed with

11   the litigation in a state court, even if the intention or result is to defeat federal diversity

12   jurisdiction").[4]

13          The Wright & Miller treatise is in accord with the Moore's treatise, noting that

14          removal followed by dismissal frequently is employed when a
15          plaintiff who is unwilling to prosecute the action in federal court
             wishes to dismiss to start a new action in state court and preclude
16          removal by joining on or more nondiverse parties, changing the
             amount sought, eliminating any federal claim, or otherwise.

17   Wright & Miller, Fed. Prac. & Proc. § 2363.  Notably, in *Wilson v. City of San Jose*, 111 F.3d 688

18   (9th Cir. 1997) the Ninth Circuit quoted this statement in Wright & Miller approvingly, adding

19

20   ─────────────────────

21   [3] The treatise adds, however, that this is not true in the Eighth Circuit.  *See* Moore's § 41.40
     ("[T]he Eighth Circuit has ruled that a plaintiff should not be permitted to dismiss voluntarily an
22   action merely to deprive the defendant of federal court jurisdiction.  This is in line with the Eighth
     Circuit's general rule that it is inappropriate for a plaintiff to use voluntary dismissal as a means of
23   seeking a more favorable forum."); *see also Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212,
     1214 (8th Cir. 2011) ("In addressing whether a district court should allow voluntary dismissal, we
24   have repeatedly stated that it is inappropriate for a plaintiff to use voluntary dismissal as an avenue
     for seeking a more favorable forum.").

25   [4] *See also Johnson v. Pharmacia & Upjohn Co.*, 192 F.R.D. 226, 228 (W.D. Mich. 1999)
     (acknowledging that "the obvious reason [plaintiff] seeks a voluntary dismissal is to defeat federal
26   jurisdiction" but stating that "the fact that a voluntary dismissal will destroy federal jurisdiction is
     insufficient to constitute [legal] prejudice to a defendant"); *Katzman v. Am. Airlines*, No. 97 Civ.
27   8321 (JSM), 1997 U.S. Dist. LEXIS 19303, at *2-3 (S.D.N.Y. Dec. 4, 1997) (stating that, "even
     when plaintiffs seek discretionary dismissal under Rule 41(a)(2), nearly all courts grant those
28   dismissals when defendant's only argument against dismissal is that the plaintiff manifestly seeks
     to defeat federal jurisdiction").

that "voluntary dismissal of an action that has been removed to federal court does not constitute

the sort of egregious forum shopping that federal courts have sought to discourage." *Id.* at 694;

*see also Chen v. eBay Inc.*, No. 15-cv-05048-HSG, 2016 U.S. Dist. LEXIS 28100, at *8 (N.D.

Cal. Mar. 4, 2016) (stating that "[t]he Ninth Circuit's reasoning in *Wilson* makes clear that even if

Plaintiffs dismissed *Chen I* with the sole intention of filing *Chen II* to avoid CAFA jurisdiction,

that strategy should not be considered 'egregious forum shopping'").

      According to Defendants, *Wilson* and *Chen* are distinguishable because they

> focus on whether a plaintiff may make *jurisdictional* changes in a subsequent action to prevent removal, such as "by the joinder of nondiverse parties" or making "change in the amount sought." Here, Aetna did not make any jurisdictional changes in its refiled complaint – diversity jurisdiction indisputably still exists. Rather, Aetna simply refiled suit to manipulate the statutory procedures governing removal and remand.

Opp'n at 8-9 (emphasis in original).  But it is far from clear that was either *Wilson* or *Chen*'s

focus.  In *Wilson*, the Ninth Circuit quoted Wright & Miller verbatim – referring to a plaintiff who

"'wishes to dismiss in order to start a new action in state court and preclude removal by the

joinder of nondiverse parties, a change in the amount sought, *or otherwise*.'"  *Wilson*, 111 F.3d at

694 (emphasis added).  In *Chen*, it appears that the plaintiffs simply wanted to *clarify* in *Chen II*

that the class was composed of only California citizens given the defendant's position that the

class definition in *Chen I* "is unclear as to the applicable time frame and could potentially include

individuals who previously resided in California 'as far back as the year 2010' but do not currently

reside in California."  *Chen I*, No. C-15-3444 SC (N.D. Cal.) (Docket No. 1) (Not. of Removal ¶

11); *see also Chen I* (Docket No. 2) (Compl. ¶ 56) (alleging that "Plaintiffs bring this California

class action on behalf of themselves and a class defined as all residents of the State of California

who are sellers of goods and services emanating from California who have or have had user

agreements with [Defendants] as far back as the year 2010, and who have utilized and are utilizing

the services provided by [Defendants]").

      Moreover, aside from *Wilson* and *Chen*, the Eleventh Circuit's decision in *Goodwin v.

Reynolds*, 757 F.3d 1216 (11th Cir. 2014), strongly supports Aetna's position that its actions were

entirely appropriate.  In *Goodwin*, the plaintiff sued several defendants in state court.

1

> One of the defendants is a citizen of the forum state.  The two non-forum defendants, however, [snap] removed the case to federal court before the forum defendant had yet been served, and indeed before any defendant had been served.  The district court subsequently granted Plaintiff's motion to dismiss the case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) so that Plaintiff could refile the case in state court in such a manner as to irrefutably trigger the forum-defendant rule and, thereby, preclude a second removal.  Defendants argue that this was an abuse of discretion.

*Id.* at 1218.  The Eleventh Circuit disagreed.

First, the court rejected the defendants' contention that "dismissal was improper because it defeated their 'substantial' right of removal."  *Id.* at 1219.  The defendants cited an Eighth Circuit case stating that "a party is not permitted to dismiss merely . . . to seek a more favorable forum." *Id.* at 1220 (internal quotation marks omitted).  But the Eleventh Circuit noted that a prior Eleventh Circuit case was in some tension with the Eighth Circuit and, even putting that tension aside, in both of those cases,

> the removability of the case was based on the substance of the action.  In seeking dismissal, the plaintiffs sought to modify that substance in order to preclude a second removal.  By contrast, the purported removability of the present case was based on a technicality.  Plaintiff need not modify the substance of her action in order to irrefutably preclude a second removal.  This is an indication that Defendants' right of removal, if any, was not as substantial as in Thatcher and American National Bank.

*Id.*

Second, the Eleventh Circuit assumed that the defendants' snap removal was permissible under the law but held that the

> [d]efendants' right of removal, if any, was not at the core of what the removal statute protects.
>
> The forum-defendant rule clearly contemplates Plaintiff's ability to defeat Defendants' purported right of removal in this case.  It is undisputed that if [the forum defendant] Reynolds had been served before Fikes and Precoat removed this case, the forum-defendant rule would have barred removal.  The only reason this case is in federal court is that the non-forum defendants accomplished a pre-service removal by exploiting, first, Plaintiff's courtesy in sending them copies of the complaint and, second, the state court's delay in processing Plaintiff's diligent request for service.  Defendants would have us tie the district court's hands in the face of such gamesmanship on the part of Defendants.  Moreover, their argument, if accepted, would turn the statute's "properly joined and

9

served" language on its head.

Congress added the "properly joined and served" language to the statute in 1948. The published legislative history apparently contains no explanation for this addition. Multiple courts, however, have interpreted it as an effort to prevent gamesmanship by plaintiffs. In the view of these courts, the purpose of the language is "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom [the plaintiff] does not intend to proceed, and whom [the plaintiff] does not even serve." We find this interpretation persuasive. Because the likely purpose of this language is to prevent gamesmanship by *plaintiffs*, moreover, we cannot believe that it constrains the district court's discretion under Rule 41(a)(2) to undo *Defendants'* gamesmanship in the circumstances at bar.

*Id.* at 1221 (emphasis added).

Finally, the Eleventh Circuit noted that there was no indication that (1) the plaintiff had fraudulently joined the forum defendant[5] or that (2) "Defendants suffered any prejudice form the dismissal, other than the loss of their preferred federal forum." *Id.* at 1222. Regarding the latter, the court did not find that loss to be legal prejudice as "Defendants' purported right to be in federal court was based on a technicality; it was not at the core of what the removal statute protects." *Id.*

Arguably, *Goodwin* is distinguishable on the basis that the Eleventh Circuit was not asked to consider whether a plaintiff could "*unilaterally* orchestrate a 'self-help' remand," Opp'n at 10 (emphasis in original) – *i.e.*, in *Goodwin*, the plaintiff was *moving* for a voluntary dismissal, not just filing a *notice* of voluntary dismissal. Although that is a distinction, it is not material to the reasoning of the Eleventh Circuit. Accordingly, the authorities above all weigh in favor of Aetna more than Defendants. As for the two main cases on which Defendants rely – *Sorin*, 2021 U.S. Dist. LEXIS 225175, a district court decision from Pennsylvania, and *Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987), a Ninth Circuit decision – both are distinguishable.

      b.     <u>Other Basis for Equitable Estoppel</u>

---

[5] It is worth noting than the jurisdictional inquiry into fraudulent joinder focuses on the objective futility of the claim against the joined defendant, not the subjective motive of the plaintiff in thwarting federal jurisdiction. *See Selman v. Pfizer, Inc.*, No. 11-cv-1400-HU, 2011 U.S. Dist. LEXIS 145019, at *18, 34 (D. Or. Dec. 16, 2011) (stating that "[t]The Ninth Circuit has never strayed from the straightforward test set forth in *McCabe*" – *i.e.*, "joinder is fraudulent if the plaintiff 'fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state'"; adding that "other circuits have stated that a plaintiff's motive has no bearing on a fraudulent joinder analysis").

United States District Court
Northern District of California

In *Sorin*, the plaintiffs had notified the defendants of a potential lawsuit in November 2019.  The parties later entered into a tolling agreement.  In October 2020, the plaintiffs terminated the tolling agreement and filed suit against the defendants.  The defendants promptly removed before the plaintiffs were able to serve (*i.e.*, the defendants snap removed).  Shortly thereafter, the plaintiffs filed a notice of voluntary dismissal.  Because the defendants suspected that the plaintiffs might try to refile and quickly serve the new complaint to prevent a second removal, they began a process of searching the state court docket to look for a new filing.  *See* Sorin, 2021 U.S. Dist. LEXIS 225175, at *7-8.  The plaintiffs then asked the defendants if they would agree to a new tolling agreement.  The defendants agreed and, in reliance on that agreement – "which expressly barred plaintiffs from refiling suit" – the defendants "discontinued their docket-monitoring efforts."  *Id.* at *9.  But "[u]nbeknownst to defendants, at the same time plaintiffs were seeking to extend the tolling agreement, they were also attempting to refile their lawsuit in state court."  *Id.*  The plaintiffs managed to file the new lawsuit in state court *and* serve the defendants before the defendants filed their notice of removal to federal court.  *See id.* at *9-10.

The plaintiffs moved the federal court for a remand.  They invoked the forum defendant rule as a basis to remand.  The district court noted that the forum defendant was not jurisdictional in nature and that there were various grounds for a court to decline to enforce the forum defendant rule:

> Relevant factors include the amount of time elapsed before a remand motion is filed, whether the movant has made use of federal processes or sought relief from the federal court before moving to remand, and whether the movant has engaged in conduct or reaped some benefit "which would make it inequitable to remand the case."

*Id.* at *15-16.  The court then found that there were equitable circumstances that weighed against removal.

> Plaintiffs have had nearly a year to respond to defendants' claim that plaintiffs breached the tolling agreement and commenced this lawsuit in state court to avoid snap removal. . . . As it stands, defendants' lead argument in favor of this court exercising jurisdiction is entirely unopposed.  The only conclusion to be reached on this record is that plaintiffs engaged in Janus-faced gamesmanship, *contractually representing to defendants that no*

> *lawsuit would be filed for at least another month, while preparing*
> *and filing that lawsuit just three days later.* The court will not
> countenance such underhanded conduct by remanding the case to
> state court.

*Id.* at *16-18 (emphasis added).

The case at hand is distinguishable from *Sorin* for several reasons. First, in *Sorin*, the plaintiffs made an express promise that they would not file a lawsuit. Here, Aetna did not make an express promise that it would not voluntarily dismiss *Aetna I*.

Second, Aetna did not make an implicit agreement not to voluntarily dismiss *Aetna I*. Aetna's statements that it would file a motion to remand in *Aetna I* (which it did) and that the Court would need to adjudicate that motion (although it never did because of Aetna's voluntary dismissal) does not invariably imply that Aetna was thereby waiving its right to voluntarily dismiss. Motions to remand and voluntary dismissals are separate and distinct. In this regard, it is notable that, in *Wilson*, the Ninth Circuit did not take issue with the plaintiffs' voluntary dismissal of their case even though that act took place *after* the lower court denied their motion to remand. *See Wilson*, 111 F.3d at 694. Aetna could have dismissed after a remand decision was rendered – with the same effect.

Third, Defendants cannot argue that Aetna's same statements led them to reasonably rely on Aetna not filing a voluntary dismissal. That argument runs up against *Wilson*. Furthermore, Defendants could have filed answers to Aetna's complaint – which would have barred any voluntary dismissal by Aetna – *without* any detriment to their position opposing the motion to remand.

Defendants protest that, on 1/27/2022 (*i.e.*, just days before Aetna filed *Aetna II*), the Individual Health Plan Plaintiffs (including Aetna) and Defendants filed a stipulation stating that "Defendants shall have until 30 days after a ruling on Aetna's motion [to remand in *Aetna I*], or such other time as the parties may agree" to respond to the *Aetna I* complaint. *Aetna I*, No. C-21-9827 EMC (Docket No. 16) (Stip. ¶ 6). But it appears that Defendants were the ones to propose that specific term in the stipulation, not Aetna. *See* Sasse Reply Decl. ¶¶ 2-3 (testifying that Defendants "emailed a preliminary draft of a stipulation . . . which included, among other things, a proposed answer date of February 16, 2022 for all Individual Health Plan actions"; that Aetna told

Defendants that it would agree to be bound by the *Staley* orders only if its case was not remanded; and that Defendants thereafter proposed a "separate date for responding to the Aetna Complaint"). In any event, as Aetna points out, in *Hamilton v. Shearson-Lehman American Express, Inc.*, 813 F.2d 1532 (9th Cir. 1987), the Ninth Circuit implicitly rejected the contention that the plaintiff should be estopped "from employing notice dismissal" under Rule 41 simply because the parties had stipulated that the defendants were not required to file an answer if a pending motion to compel arbitration were granted.  *Id.* at 1533, 1535.

This leaves Defendants with the *Lou* case which the Court previously considered when Defendants moved to vacate Aetna's voluntary dismissal in *Aetna I*.  *Lou* does not provide any real support to Defendants.  There, the Ninth Circuit simply noted that, where a case has been removed from state to federal court, the federal court has the authority to enjoin the state court action from proceeding.  The Ninth Circuit noted that such action is permitted by the Anti-Injunction Act because the statute provides that a federal court "'may not grant an injunction to stay proceedings in a State court *except* as expressly authorized by Act of Congress,'" *Lou*, 834 F.2d at 739 (quoting that Anti-Injunction Act, 28 U.S.C. § 2283; emphasis added), and the removal statute, 28 U.S.C. § 1446(e), has "been construed as an express congressional authorization to enjoin or stay the state court proceedings."  *Id.* at 740 (noting that § 1446(e) provides that "'the State court shall proceed no further unless and until the case is remanded'").

Defendants, of course, point to the fact that the Ninth Circuit went on to consider what to do when "a new action is filed in state court."  *Id.*  The Ninth Circuit took note of a case where the Fifth Circuit

> state[d] that "where a district court finds that a second suit filed in
> state court is an attempt to subvert the purposes of the removal
> statute, it is justified and authorized by § 1446(e) in enjoining the
> proceedings in the state court."  It would be of little value to enjoin
> continuance of a state case after removal and then permit the refiling
> of essentially the same suit in state court.  We agree with the Fifth
> Circuit that where a second state court suit is fraudulently filed in an
> attempt to subvert the removal of a prior case, a federal court may
> enter an injunction.

*Id.* at 741.  But *Lou* involved a situation where a federal suit obtained while an identical state suit was filed.  It did not address the situation where a plaintiff exercised its unilateral right to

13

1   voluntarily dismiss the first suit under Rule 41.  *See Marsoobian v. Transamerica Life Ins. Co.*,

2   No. 1:16-cv-1412-LJO-MJS, 2016 U.S. Dist. LEXIS 170998, at *17 (E.D. Cal. Dec. 7, 2016)

3   (pointing out that *Lou* "dealt with the district court's power to enjoin duplicative, subsequent state

4   court proceedings that were initiated after the court declined to remand an original suit" and did

5   not "address[] extending jurisdiction from a dismissed prior suit to a second suit[;] *Marsoobian I*

6   was dismissed unilaterally by Plaintiffs under Rule 41(a)(1)(A)(i), which was their absolute and

7   unfettered right" which "immediately divested the Court of all jurisdiction over that action").

8   C.       Federal Question Jurisdiction

9           Defendants argue that, even if the forum defendant rule is applicable, that would only

10   prevent removal based on diversity jurisdiction.  Defendants assert federal question jurisdiction as

11   an independent basis for removal.  In the instant case, there is no dispute that Aetna pleads only

12   state law claims and no federal claims.  However, in *Grable & Sons Metal Products v. Darue*

13   *Engineering & Manufacturing*, 545 U.S. 308 (2005), the Supreme Court held that a federal cause

14   of action is not required as a condition of exercising federal question jurisdiction.  According to

15   Defendants, even though Aetna has not asserted any federal claims in its complaint, there is still

16   federal question jurisdiction under *Grable*.

17           1.       *Grable* Test

18           In *Grable*, the Supreme Court noted that, "for nearly 100 years," it had recognized that, "in

19   certain cases federal-question jurisdiction will lie over state-law claims that implicate significant

20   federal issues" – which reflects "the commonsense notion that a federal court ought to be able to

21   hear claims recognized under state law that nonetheless turn on substantial questions of federal

22   law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal

23   forum offers on federal issues."  *Id.* at 312.  The Supreme Court emphasized, however, that it was

24   not taking "the expansive view that mere need to apply federal law in a state-law claim will suffice

25   to open the 'arising under' door."  *Id.* at 313.  "Instead, the question is, does a state-law claim

26   necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum

27   may entertain without disturbing any congressionally approved balance of federal and state

28   judicial responsibilities."  *Id.* at 314.

United States District Court
Northern District of California

14

1    In *Grable* itself, that test was satisfied.  The plaintiff had owned certain real property that

2   the IRS seized to satisfy a tax delinquency.  The defendant purchased the real property from the

3   IRS.  The plaintiff subsequently filed suit in state court, claiming that the defendant's "record title

4   was invalid because the IRS had failed to notify [the plaintiff] of its seizure of the property in the

5   exact manner required by [26 U.S.C.] § 6335."  *Id.* at 311.  The defendant removed the case from

6   state to federal court, asserting federal question jurisdiction.  The Supreme Court agreed that

7   federal question jurisdiction was proper.

> [The plaintiff] Grable has premised its superior title claim on a
> failure by the IRS to give it adequate notice, as defined by federal
> law.  Whether Grable was given notice within the meaning of the
> federal statute is thus an essential element of its quiet title claim, and
> the meaning of the federal statute is actually in dispute; it appears to
> be the only legal or factual issue contested in the case.  The meaning
> of the federal tax provision is an important issue of federal law that
> sensibly belongs in a federal court.  The Government has a strong
> interest in the "prompt and certain collection of delinquent taxes,"
> and the ability of the IRS to satisfy its claims from the property of
> delinquents requires clear terms of notice to allow buyers like [the
> defendant] Darue to satisfy themselves that the Service has touched
> the bases necessary for good title.   The Government thus has a
> direct interest in the availability of a federal forum to vindicate its
> own administrative action, and buyers (as well as tax delinquents)
> may find it valuable to come before judges used to federal tax
> matters.   Finally, because it will be the rare state title case that
> raises a contested matter of federal law, federal jurisdiction to
> resolve genuine disagreement over federal tax title provisions will
> portend only a microscopic effect on the federal-state division of
> labor.

*Id.* at 314-15.

    In contrast, the Supreme Court held that the *Grable* test had not been satisfied in *Empire*

*HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006).  The plaintiff in *Empire* was a

local Blue Cross Blue Shield company.  It had contracted with the federal government (OPM) to

provide a health care plan for federal employees.  OPM was authorized to contract with the

plaintiff pursuant to the Federal Employees Health Benefits Act of 1959.  *See id.* at 682.

> The instant case originated when the administrator of a Plan
> beneficiary's estate pursued tort litigation in state court against
> parties alleged to have caused the beneficiary's injuries.  The carrier
> had notice of the state-court action, but took no part in it.  When the
> tort action terminated in a settlement, the carrier filed suit in federal
> court seeking reimbursement of the full amount it had paid for the
> beneficiary's medical care.

*Id.* at 683.

  One of the arguments raised by the plaintiff was that federal question jurisdiction was proper over its reimbursement claim under *Grable*. The Supreme Court rejected the contention. It indicated first that *Grable* simply established a "special and small category" of cases over which federal question jurisdiction was appropriate. *Id.* at 699. But

> [t]his case is poles apart from *Grable*. The dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as "substantial," and its resolution was both dispositive of the case and would be controlling in numerous other cases. Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court, and the bottom-line practical issue is the share of that settlement properly payable to [the plaintiff] Empire.
>
> *Grable* presented a nearly "pure issue of law," one "that could be settled once and for all and thereafter would govern numerous tax sale cases." In contrast, Empire's reimbursement claim . . . is fact-bound and situation-specific. [The defendant] McVeigh contends that there were overcharges or duplicative charges by care providers, and seeks to determine whether particular services were properly attributed to the injuries caused by the 1997 accident and not rendered for a reason unrelated to the accident.

*Id.* at 700-01. The Court underscored that, under *Grable*, "it takes more than a federal element 'to open the "arising under" door,'" and "[t]his case cannot be squeezed into the slim category *Grable* exemplifies." *Id.* at 701.

  Similarly, in *Gunn v. Minton*, 568 U.S. 251 (2013), the Supreme Court concluded that the *Grable* test had not been satisfied. The plaintiff in *Gunn* filed a legal malpractice suit in state court. According to the plaintiff, his former lawyers had committed malpractice while representing him in a patent infringement suit – specifically, by failing to argue the experimental use exception to the on-sale bar. (Because of the on-sale bar, the plaintiff's patent had been invalidated during the patent infringement proceedings.) *See id.* at 253-54. The plaintiff lost in his malpractice suit. On appeal, the plaintiff raised a new argument:

> Because this legal malpractice claim was based on an alleged error in a patent case, it "aris[es] under" federal patent law for purposes of 28 U.S.C. § 133(a)[,] [a]nd because, under § 1338(a), "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents," the Texas court – where

16

United States District Court
Northern District of California

1          [the plaintiff] Minton had originally brought his malpractice claim –
           lacked subject matter jurisdiction to decide the case.

2   *Id.* at 255.

3          The Supreme Court held that, under *Grable*, federal jurisdiction was not proper.  The Court

4   acknowledged first that "resolution of a federal patent question is 'necessary' to [the plaintiff]

5   Minton's case" because, "[t]o prevail on his legal malpractice claim, . . . Minton must show that he

6   would have prevailed in his patent infringement case if only petitioners had timely made an

7   experimental-use argument on his behalf.  This will necessarily require application of patent law

8   to the facts of Minton's case."  *Id.* at 259.  The Court then acknowledged that the federal issue was

9   "'actually disputed' . . . – indeed, on the merits, it is the central point of dispute."  *Id.*  However,

10  the Court concluded, the federal issue was "not substantial in the relevant sense."  *Id.* at 260.

11         The Texas Supreme Court had "focused on the importance of the issue to the plaintiff's

12  case and to the parties before it" but,

13         [a]s our past cases show, . . . it is not enough that the federal issue be
           significant to the particular parties in the immediate suit; that will
14         always be true when the state claim "necessarily raise[s]" a disputed
           federal issue, as *Grable* separately requires. The substantiality
15         inquiry under *Grable* looks instead to the *importance of the issue to
           the federal system as a whole*.
16

17  *Id.* (emphasis added).  The Supreme Court underscored that a legal malpractice claim is

18  "backward-looking" in nature and poses a question

19         in a merely hypothetical sense: *If* Minton's lawyers had raised a
           timely experimental-use argument, would the result in the patent
20         infringement proceeding have been different?  No matter how the
           state courts resolve that hypothetical "case within a case," it will not
21         change the real-world result of the prior federal patent litigation.
           Minton's patent will remain invalid.
22

23  *Id.* at 261 (emphasis in original).  Thus, the federal issue in *Gunn* was not substantial.  The Court

24  added that, "even assuming that a state court's case-within-a-case adjudication may be preclusive

25  under some circumstances, the result would be limited to the parties and patents that had been

26  before the state court."  *Id.* at 263 (citing *Empire*).  There was no indication that the federal issue

27  was "significant to the federal system as a whole."  *Id.* at 264.

28         Finally, the Court held that, given its analysis on whether there was a substantial federal

*United States District Court*
*Northern District of California*

17

1    issue, "*Grable*'s fourth element is also not met." *Id.* "We have no reason to suppose that

2    Congress – in establishing exclusive federal jurisdiction over patent cases – meant to bar from

3    state courts state legal malpractice claims simply because they require resolution[of a hypothetical

4    patent issue." *Id.*

5               2.    *Balderas*

6          As noted above, *Grable* establishes a "slim category" of cases in which federal jurisdiction

7    is appropriate over state law claims. *Empire*, 547 U.S. at 701. Specifically, "federal jurisdiction

8    over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3)

9    substantial, and (4) capable of resolution in federal court without disrupting the federal-state

10   balance approved by Congress." *Gunn*, 568 U.S. at 258.

11         In its papers, Aetna points out that a New Mexico district court has already considered

12   whether there is federal question jurisdiction under *Grable* in a case that is largely the same as that

13   brought by Aetna. *See N.M. ex rel. Balderas v. Gilead Scis., Inc.*, 548 F. Supp. 3d 1098 (D.N.M.

14   2021). In *Balderas*, the state of New Mexico sued Gilead, BMS, and Teva based on, *inter alia*, (1)

15   reverse payment settlement agreements between Gilead and Teva, (2) a joint venture agreement

16   between Gilead and BMS related to the drug Atripla, and (3) Gilead's delay in launching TAF, *see*

17   *id.* at 1101 – *i.e.*, many of the same facts involved in the instant case. All of the causes of action

18   asserted by the state were predicated on state law (*e.g.*, antitrust and consumer protection). The

19   state filed its action in state court, but the defendants removed to federal court. The state court

20   then moved for a remand, asserting lack of subject of matter jurisdiction.

21         The district court held that the *Grable* test had not been satisfied – primarily because

22   defendants did not establish that the state law claims at issue "*necessarily* raise[d] a stated federal

23   issue." *Id.* at 1103 (emphasis added). The court took into account the defendants' contention that

24   federal issues necessarily raised included "a determination of the strength and validity of [the

25   defendants'] patents, interpretation of the State's Medicaid rebate agreements with the U.S.

26   Secretary of Health and Human Services, application of federal drug pricing laws, and proof that

27   the U.S. Food and Drug Administration . . . would have approved a new combination of

28   branded/generic drugs." *Id.* But according to the court, "even though patent law, the FDA drug

approval process and federal Medicaid regulations loom in the background of all seven of the State's claims," the claims "do not necessarily 'turn' on resolution of a federal question." *Id.* at 1104. That is, the state could "establish the facts necessary for holding Defendants liable for breaches of state law without forcing a court to interpret or even apply federal statutes or regulations."[6] *Id.* at 1103.

The district court went on to question whether any federal issue – even if necessarily raised and actually disputed – was substantial, although the court ultimately did not decide the matter. *See id.* at 1106 ("[T]he Court is not convinced that either the overlap between this case and *Staley* or New Mexico's status as a government payor is significant enough to render the background federal issues 'substantial.'"). Similarly, the court "assume[d] without deciding that Defendants' claim of jurisdiction further falters at the final prong of the *Grable* . . . test: whether a federal court could resolve the federal question without disrupting the federal-state balance approved by Congress." *Id.* at 1107. The court stated that "[t]he New Mexico state court in which this suit was lodge[d] is competent to apply federal law, to the extent it is relevant, and would seem best positioned to determine whether Defendants are liable under two of its state laws." *Id.*

*Balderas*, of course, is not binding on this Court and the analysis therein should not serve as a substitute for the Court's own analysis; nevertheless, the case is noteworthy.

3.   Federal Issues

According to Defendants, Aetna's state law claims necessarily raise substantial federal issues related to (1) federal drug regulatory law, (2) federal patent law, and (3) federal antitrust law. (The Court focuses on the "necessarily raise" and "substantial" requirements of the *Grable*

---

[6] The New Mexico court's understanding of "necessarily raised" is consistent with case law in the Ninth Circuit. *See Rains v. Criterion Sys.*, 80 F.3d 339, 346 (9th Cir. 1996) ("When a claim can be supported by alternative and independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction does not attach because federal law is not a necessary element of the claim."); *Sangimino v. Bayer Corp.*, No. C 17-01488 WHA, 2017 U.S. Dist. LEXIS 89152, at *7 (N.D. Cal. June 9, 2017) ("Our court of appeals has made it clear that where a complaint pleads alternative theories to support a claim – one federal and one state-based – it does not satisfy the 'necessarily raised' requirement of federal-question jurisdiction."); *cf. Kripke v. Safeway, Inc.*, No. 3:18-cv-02808-WHO, 2018 U.S. Dist. LEXIS 121935, at *20-21 (N.D. Cal. July 20, 2018) ("If there is a question whether those state laws 'can and do[] serve the same purpose' as the federal laws [the plaintiff] relies on, that does not alter the conclusion that his claims 'can be supported by an independent state theory . . . .'").

1    test as they are the most significant with respect to resolution of this matter before the Court.)

2                        a.    Federal Drug Regulatory Law

3            In their opposition, Defendants point out that the claims based on the patent settlement

4    agreements between Gilead and Teva are based on allegations that the companies "tried to 'game'

5    the federal drug-regulatory system" – *e.g.*, with the Atripla/Truvada settlement agreement, the

6    companies tried to restore Teva's forfeiture of its 180-day first-filer exclusivity.  Opp'n at 14.  It is

7    questionable whether Aetna has necessarily raised a federal issue here.  For example, there is no

8    suggestion that federal law is an element of the claims based on the settlement agreements.

9    *Compare Grable*, 545 U.S. at 315 (noting that "[w]hether [the plaintiff] Grable was give notice

10   within the meaning of the federal [tax] statute is . . . an essential element of its quiet title claim");

11   *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 384 (2016)

12   (noting that *Grable* "typically fits cases . . . in which a state-law cause of action is 'brought to

13   enforce' a duty created by the Exchange Act because the claim's very success depends on giving

14   effect to a federal requirement"); *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1,

15   9 (1983) (stating that "[w]e have often held that a case 'arose under' federal law where the

16   vindication of a right under state law necessarily turned on some construction of federal law").

17   The mere fact that Aetna charges the companies with trying to set up a structure that would

18   *emulate* first-filer exclusivity does not mean that first-filer exclusivity is itself an element of any

19   claim.

20           Defendants have a better argument that Aetna has necessarily raised a federal issue

21   because all of its the claims, including but not limited to those based on the No-Generic Restraints

22   ("NGRs"), are based on allegations that generic versions of the drugs would have launched earlier

23   but for the alleged unlawful conduct: "[P]roving whether and when competing generics could have

24   obtained final FDA approval requires the interpretation and application of federal law."  Opp'n at

25   14-15.  Here, Aetna has arguably raised a federal issue, and necessarily so.  A major predicate of

26   Aetna's suit is that generics would have launched earlier.

27           That being said, even if Aetna has necessarily raised federal issues related to federal drug

28   regulatory law, the federal issues cannot be characterized as substantial.  Defendants contend that

there is substantiality because "the federal drug-regulatory, patent, and antitrust questions are being litigated in nearly identical nationwide class actions and opt-out actions in this Court by various plaintiff groups." Opp'n at 20.  But just because other cases exist that involve similar issues is not dispositive.  The question is whether there is a "*nearly 'pure issue of law*,*'* one 'that could be settled once and for all and thereafter would govern numerous [other] cases." *Empire*, 547 U.S. at 700 (emphasis added).  Here, there is no pure issue of law or nearly pure issue of law. There is no key question regarding the interpretation of federal law.  Rather, the claims related to the settlement agreements are "fact bound and situation specific" – asking the Court to consider the specific settlement agreements negotiated between Gilead and Teva.  *Id.* at 701; *see also City of Oakland v. BP Pub. Ltd. Co.*, 969 F.3d 895, 906-07 (9th Cir. 2020) (asking whether there is a "'context-free inquiry into the meaning of a federal law'").

Defendants also suggest that there is a substantial federal issue here because "the Complaint seeks broad injunctive relief and compulsory licenses for the patents at issue and allegedly ongoing conduct."  Opp'n at 21.  But in *Gunn*, the Supreme Court emphasized that "[t]he substantiality inquiry under *Grable*" does not look to the "significan[ce] to the particular parties in the immediate suit" but rather "to the importance of the issue to the *federal system as a whole*."  *Gunn*, 568 U.S. at 260 (emphasis added).  As the *Gunn* Court pointed out, this was satisfied in *Grable* because there was "broader significance" with respect to

> the notice question for the Federal Government. We emphasized the Government's "strong interest" in being able to recover delinquent taxes through seizure and sale of property, which in turn "require[d] clear terms of notice to allow buyers . . . to satisfy themselves that the Service has touched the bases necessary for good title."

*Id.* at 260.  Similarly, there was broader significance in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921).

> In *Smith*, the plaintiff argued that the defendant bank could not purchase certain bonds issued by the Federal Government because the Government had acted unconstitutionally in issuing them. We held that the case arose under federal law, because the "decision depends upon the determination" of "the constitutional validity of an act of Congress which is directly drawn in question." Again, the relevant point was not the importance of the question to the parties alone but rather the importance more generally of a determination that the Government "securities were issued under an

unconstitutional law, and hence of no validity."

*Gunn*, 568 U.S. at 261.  In the instant case, there is no comparable significance.  The constitutionality of a federal law is not at issue.  Nor have Defendants identified any requirement here of an interpretation of federal law that has broad consequences important to "the federal system as a whole."

          b.      <u>Federal Patent Law</u>

In their opposition brief, Defendants point to allegations in the complaint that Gilead knew its "patents were weak and likely to be invalidated," Compl. ¶ 116; *see also* Compl. ¶ 160 (similarly alleging that BMS knew certain of its "patents were weak and likely to be invalidated") – and thus expected that it would lose the patent infringement suits brought against Teva and other generic manufacturers, which, in turn, would lead to early generic entry into the market.  *See* Compl. ¶ 175.  According to Defendants, at the very least, Aetna's claims based on the settlement agreements with Teva necessarily raise a federal issue – *i.e.*, validity of Gilead's patents: "The Complaint's sole theory of causation for its patent settlement claims is that but for the settlement of patent litigations . . . , Teva would have prevailed, leading to earlier generic competition." Opp'n at 16.

As an initial matter, the Court questions whether it would be required to adjudicate the validity of the patents per se.  Actual invalidity (as opposed to the likelihood of invalidity) may not require adjudication.  But even if Defendants were correct, they would still encounter the same obstacle as above.  That is, even if Aetna has necessarily raised a federal issue here, it is not substantial as that requirement has been framed by the Supreme Court, particularly in *Gunn*. There is, for instance, no novel issue of patent law that will need to be decided in this litigation. Rather, Defendants simply make the same problematic arguments on substantiality that the Court rejected above.

Finally, as Aetna points out in its papers, in *Gunn*, the Supreme Court noted that the plaintiff's legal malpractice claim was "backward looking" and posed a question

> in a merely hypothetical sense: *If* Minton's lawyers had raised a timely experimental-use argument, would the result in the patent infringement proceeding have been different?  No matter how the

United States District Court
Northern District of California

> state courts resolve that hypothetical "case within a case," it will not
> change the real-world result of the prior federal patent litigation.
> Minton's patent will remain invalid.

*Gunn*, 568 U.S. at 261 (emphasis in original).  Here, Aetna fairly contends that the patent validity issue in the case at bar would be similarly backward looking and hypothetical, and thus substantiality would be lacking.  There would no real world impact as a result of looking at the validity (or, more accurately, probable invalidity) of the main Gilead patents (related to TDF and FTC) because the patents at issue "have all since expired."  Mot. at 13.

c.   Federal Antitrust Law

Finally, Defendants contend that Aetna's case necessarily raises a federal issue because at least part of the California antitrust claim is actually a federal claim: "[T]he Complaint asserts unilateral monopolization and attempted monopolization claims, supposedly under California's Cartwright Act[,] [b]ut '[a]n alleged unilateral attempt to establish a monopoly is not cognizable under the Cartwright Act' [and] must be asserted under the federal Sherman Act."  Opp'n at 18. This argument lacks merit.  Aetna's complaint makes clear that its monopolization claims are based on concerted, and not unilateral, conduct.  *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) (stating that "[c]ombinations to monopolize would appear to fall within the general prohibitions of the Cartwright Act, but [the] statute does not address *unilateral* conduct") (emphasis in original).  *See, e.g.*, Compl. ¶ 430 (in Count V, claim for monopolization and monopolistic scheme in violation of the Cartwright Act, alleging that "Gilead, acting individually and with other defendants and co-conspirators, willfully obtained and maintained its monopoly power in the cART market and narrower markets therein using restrictive or exclusionary conduct"); Compl. ¶ 460 (in Count VII, claims for attempted monopolization in violation of the Cartwright Act, alleging that "Gilead, acting individually and in concert with other defendants and co-conspirators, knowingly, willfully, and wrongfully attempted to acquire and/or maintain monopoly power").

D.   Cross-Motion for Permanent Injunction

For the foregoing reasons, the Court grants Aetna's the motion to remand.  The forum defendant rule does apply (*e.g.*, Aetna is not estopped from relying on the rule), and the *Grable*

23

1  test for federal question jurisdiction has not been satisfied.

2      As a last-ditch effort, Defendants argue that, if the Court grants the motion to remand, it

3  should still enjoin Aetna from prosecuting its case in the state court.  *See* Opp'n at 21; Cross-Mot.

4  at 1.  This makes little sense.  Because the Court concludes that Aetna acted within its rights in

5  voluntarily dismissing *Aetna I* – even if that involved gamesmanship – then there is no basis to

6  enjoin Aetna from prosecuting *Aetna II* in state court.  Defendants' reliance on *Lou* is of no

7  assistance because, there, there was a pending federal action which was the predicate for decision

8  to enjoin the state court action.  Here, the Court is remanding *Aetna II*; thus, there is no pending

9  federal action and thus no federal predicate upon which to base any injunction.

### III.    CONCLUSION

Aetna's motion to remand is granted, and Defendants' cross-motion for an injunction is

denied.

This order disposes of Docket Nos. 18 and 26.


**IT IS SO ORDERED**.


Dated: April 20, 2022

_____
EDWARD M. CHEN
United States District Judge